AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
Jun 27 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 24MJ8561
Black Apple iPhone )
Model: Unknown )
Seized as FP& F: 2024255400015601 Item: 002 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Border Patrol Agent Fernando Quiroz
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date: 06/27/2024

_____
Judge's signature

City and state: El Centro, California     HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
Printed name and title

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**	Black Apple iPhone
	Model: Unknown
	Seized as FP& F: 2024255400015601 Item: 002
	Seized from Fernando FERNANDO-Francisco
	**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of May 5, 2024, up to and including June 5, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:** Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400015601 Item: 002
Seized from Fernando FERNANDO-Francisco
**(Target Device #1)**

**A-2:** Black Samsung Cellphone
Model: Unknown
Seized as FP& F: 2024255400015601 Item: 003
Seized from Gonzalo Felix MARCOS-Vicente
**(Target Device #2)**

**A-3:** Blue Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400015601 Item: 004
Seized from Otto Rene SUNUC-Atz
**(Target Device #3)**

**A-4:** Blue ZTE Cellphone
Model: Unknown
Seized as FP& F: 2024255400015601 Item: 005
Seized from Jose FELIX-Santiago
**(Target Device #4)**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Fernando FERNANDO-Francisco (FERNANDO) and Gonzalo Felix MARCOS-Vicente (MARCOS) for transportation of illegal aliens Jose FELIX-Santiago (FELIX) and Otto

Rene SUNUC-Atz (SUNUC) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from FERNANDO, MARCOS and the Material Witnesses on or about June 4, 2024, incident to the arrest of FERNANDO, MARCOS and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

1  undocumented aliens into the United States; and the transportation and harboring of
2  undocumented aliens within the United States.
3        6.    Through the course of my training, investigations, and conversations with
4  other law enforcement personnel, I have gained a working knowledge of the operational
5  habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into
6  the United States from Mexico and transport them throughout the Southern District of
7  California. I am aware that it is a common practice for alien smugglers to work in concert
8  with other individuals and to do so by utilizing cellular telephones to maintain
9  communications with co-conspirators and/or illegal aliens in order to further their criminal
10 activities. Because they are mobile, the use of cellular telephones permits alien smugglers
11 and transporters to easily carry out various tasks related to their smuggling activities,
12 including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,
13 providing instructions to transporters, guiding aliens to specific pick up locations, warning
14 accomplices about law enforcement activity in the area and the status of check-point
15 operations, and communicating with co-conspirators who guide aliens, coordinate drop off
16 locations, and/or operate alien stash houses.
17       7.    The smuggling of aliens generates many types of evidence, including, but not
18 limited to, cellular phone-related evidence such as voicemail messages referring to the
19 arrangements of travel, names, photographs, text messaging (via SMS or other
20 applications), and phone numbers of co-conspirators and illegal aliens. For example,
21 drivers and passengers responsible for transporting illegal aliens are typically in telephonic
22 contact with co-conspirators immediately prior to and/or following the crossing of the
23 illegal aliens at the border, at which time they receive instructions, including where to pick-
24 up the illegal aliens for transportation into the United States and where to take the illegal
25 aliens after crossing into the United States. These communications may also include
26 locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in
27 telephonic contact with co-conspirators prior to and following their crossing in order to
28

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On June 4, 2024, Agents from the Calexico Station were conducting surveillance in the East Desert of the Calexico Border Patrol Station's Area of Responsibility, approximately 25 miles east of Calexico Port of Entry. At approximately 1:15 p.m., BPA J. Stefan, from the Remote Video Surveillance System (RVSS) room, observed two suspected illegal aliens walking north from the border southeast of the Imperial Irrigation District's Drop 3. BPA Stefan relayed this information to Agents in the field via service radio and maintained visual of the two suspected illegal aliens as they continued north towards the All American Canal (AAC), swam through the AAC, and then continued moving north. BPA 0. Ismail, who was driving an unmarked Border Patrol Service vehicle in the area, positioned himself on the eastbound shoulder of Highway 98 and maintained visual.

11. BPA Ismail observed a white sedan, later identified as a Nissan Sentra, stop in the eastbound lanes of Highway 98, and observed the two suspected illegal aliens board the Sentra. The Sentra then continued driving east on Highway 98 towards Interstate 8 and then turned west on Old Highway 80. BPA R. Ramirez, who was driving a fully marked Border Patrol Service vehicle, fell in behind BPA Ismail and the Agents continued following the Sentra for approximately 11 miles.

12. At approximately 2:20 p.m., BPA Ismail and BPA Ramirez activated their emergency lights and sirens to signal for the Sentra to stop. The Sentra pulled to the shoulder of Old Highway 80 and BPA Ismail approached the driver, later identified as FERNANDO, and the driver's side back seat passenger, later identified as Otto Rene SUNUC-Atz. FERNANDO was determined to be a Lawfully Admitted Permanent Resident of the United States and SUN AC was determined to be a citizen of Guatemala. BPA Ramirez approached the front seat passenger, later identified as MARCOS, and the

remaining back seat passenger, later identified as Jose FELIX-Santiago. MARCOS was determined to be a citizen of Guatemala claiming asylum and FELIX was determined to be a citizen of Mexico illegally present in the United States. FERNANDO, MARCOS, SUNUC and FELIX were placed under arrest and were transported to the Calexico Border Patrol Station for further processing.

13. At the Border Patrol Station, record checks confirm MARCOS is the registered owner of the Nissan Sentra used in this smuggling event. During a post-Miranda interview, FERNANDO stated that he drove with his friend to Yuma today to explore new places. FERNANDO stated he stopped at a 7-Eleven gas station in Yuma. FERNANDO claimed he was navigating using GPS which indicated he was in Yuma, Arizona. FERNANDO stated that he made a stop to pick up and assist the two individuals. FERNANDO stated that he was not aware the two subjects that he picked up were illegally into the United States.

14. Material Witness FELIX stated he is a citizen of Mexico. FELIX stated he left Mexicali with the intent to illegally cross into the United States and his destination is Los Angels, California. FELIX stated that arrangements were done for him before he left Mexicali to be smuggled to the United States illegally for $8,000 U.S Dollars upon his arrival to North Carolina. FELIX stated the color of load vehicle was white.

15. Material Witness SUNUC stated he has dual citizenship in Guatemala and Mexico. SUNUC stated he left Mexicali with the intent to illegally cross into the United States and his destination is Los Angeles, California. SUNUC stated that arrangements were done before he left Mexicali to be smuggled to the United States illegally for $2,000 U.S Dollars upon his arrival to Dallas, Texas. SUNUC stated the color of load vehicle was white.

16. During a search incident to arrest of FERNANDO, MARCOS, and the Material Witnesses, four cellphones were found: a black Apple iPhone (Target Device #1) was found sitting on the center console and FERNANDO claimed ownership of this phone. BPA R. Ramirez located a Black Samsung cellphone (Target Device #2) in the center

console and MARCOS claimed ownership of this phone. BPA Ismail found two cellphones on the backseat of the vehicle: a blue Motorola cellphone (Target Device #3) was claimed by SUNUC and a blue ZTE cellphone (Target Device #4) was claimed by FELIX. All cellphones were seized as evidence.

17. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on May 5, 2024, up to and including June 5, 2024, the day after the arrest of FERNANDO, MARCOS, and the Material Witnesses.

## METHODOLOGY

18. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be

acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

21. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that FERNANDO, MARCOS, and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by FERNANDO, MARCOS, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 27th day of June, 2024.

1:51 p.m.

HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

A-1:       Black Apple iPhone
           Model: Unknown
           Seized as FP& F: 2024255400015601 Item: 002
           Seized from Fernando FERNANDO-Francisco
           **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**     Black Samsung Cellphone
Model: Unknown
Seized as FP& F: 2024255400015601 Item: 003
Seized from Gonzalo Felix MARCOS-Vicente
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**   Blue Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400015601 Item: 004
Seized from Otto Rene SUNUC-Atz
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**   Blue ZTE Cellphone Cellphone
Model: Unknown
Seized as FP& F: 2024255400015601 Item: 005
Seized from Jose FELIX-Santiago
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of May 5, 2024, up to and including June 5, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.